182043 Craig R. Jalbert v. Securities and Exchange Commission Good morning, Your Honor. May it please the Court, my name is Alex Lippman. With me at the council table is Josh Dunn. We represent Craig Jalbert, the liquidating trustee for the F-Squared Liquidating Trust, and may I please reserve three minutes for rebuttal? You may. Thank you, Your Honor. The SEC is currently holding $30 million in what it purported to be a disgorgement but really constitutes an unlawful penalty. It got this penalty, got this $30 million, and it had no power to get it. It had no power to ask for it, had no power to enter into an agreement with a respondent that the respondent would pay for it, it had no power to collect it, it had no power to pay it over to the Treasury, and it does not have the power to hold it to this day. Well, you say all that, but in fact what happened was the agency made some allegations, made some demands. F-Squared could have said, we don't think you have the power to do it, or we have other defenses, and could have sought judicial review, and if everything you just said is correct, it would have won on seeking judicial review. But instead it decided to enter into a settlement agreement in which it, quote, expressly waived judicial review. That's exactly correct, Your Honor. Now you want us to provide a judicial review and to decide that had they not waived that review, and had they fought it, they would have won. So at the time that the agreement was entered into, no one, no one in this country really understood that the way that the SEC was employing disgorgement was unlawful. Well, that makes it even worse for you, because then you're saying you have a defense that was uncertain, so like many parties with an uncertain defense, you decided to waive it to do a settlement. That's not true, Your Honor. We didn't waive because the defense was uncertain. We waived because everybody was certain that the SEC had power at the time to do exactly what it wanted. Except when you waive judicial review, we're not going to read that clause as being meaningless or superfluous. It presumably anticipates that you may well have a winning argument, all sorts of winning arguments, but you're waiving them. Otherwise, they wouldn't need the waiver. Well, but this case, so there are a couple answers to that. One is this is not a typical waiver that you get in a civil case, right? In a typical waiver, what the waiver recites is whatever claims you have, known and unknown, from the beginning of time to the end of time, all of those claims are waived. That's not what this says. What this says is that you waive review of the order in Since you waive judicial review. Right. Of the order. Of the order. The APA permits you to bring an action against a government agency acting outside of its authority. Not after you've waived the right to do that. I'm sorry? Not after you've waived the right to do that. We waive the right to seek review of the order, but I don't think that even that waiver covers this situation. So you agree that the order should stay in place no matter what we do? No. So you're seeking judicial review of the order? Well, there's a portion of the order that's void. Isn't there a declaration that an order is void? To arrive at that, we would have to engage in judicial review of that order. No. How would we get there, then? The APA says the court shall find unlawful and set aside. The first part is find unlawful. Why is the APA, isn't there a statute here that determines how you appeal orders from the SEC? There are provisions. Just answer my question, please. Yes. And isn't that what we have here? No. Well? No. You're appealing an order at this point. You're appealing a decision of the district court, which in turn was interpreting your lawsuit challenging an order of the SEC. Am I correct? That is correct. Okay. No, I'm sorry. I'm sorry. No, that's not correct. Oh. We are not. Our lawsuit is not, here's an order that needs to be challenged, and we're late to the game challenging this order. Our lawsuit is, and this comes out of the Supreme Court's reasoning in Kokesh, is that the way that the SEC went about using disbordment provisions is unlawful. It never had the power to use them the way that they did because We don't engage in abstract analysis about what the SEC powers were or not. We either engage in judicial review and assess whether that order, you can challenge that order as reviewable, or we don't. In other words, let me put it this way. Can we start off our opinion that you agree you waive judicial review, therefore you agree we should engage in no judicial review of the order entered against your client? Can we start off our opinion saying that? Well, you could. And you'll be fine with that if we do. You concede that's a proper way to put it. Well, no. All right. So you want us to engage in judicial review. Well, let me say. You can't have it both ways. Well, I can. Let me say it this way. If the SEC said, in this case, here's what we want you to do. We want you to send us $30 million and spend six months in prison, right? You say no. I'm sorry? You say no. I won't settle along those lines. You are correct, Your Honor. You don't have to do it. That is a very good point. In administrative proceedings, you don't actually have to follow an unlawful order. You don't have to settle. I'm sorry? You don't have to settle. Well, if you settle. You can adjudicate your rights by challenging what is being presented to you as a disgorgement request. They didn't have to agree with it. Your Honor, you are correct that they didn't have to agree with it. What is wrong with this proposition is that the SEC doesn't have the power to impose a penalty that Congress does not authorize. That is the separation of powers problem that we've been talking about. If you don't agree with that, you don't file a lawsuit under the Administrative Procedures Act, you appeal that order to this court directly. Unless, Your Honor, you don't know at the time that it happened that that disgorgement constitutes an unlawful penalty. What happened in this case is that the Kokesh opinion, in finding that the SEC disgorgement was a penalty, it went through an analysis of how you pay for deterrence and punishment, and you pay it over to the Treasury. That means it's a penalty. When the SEC stands up, I'm sure that they're not going to be able to identify a reason for this $30 million payment other than penalty. There are people sitting in prison, okay? They're sitting in prison because at the time they entered a plea proceeding and pled guilty, the law was sought to be a certain way. Then years later, the Supreme Court says, no, the law is different. They don't get to take back their plea agreement. They don't get out of prison unless the Supreme Court specifically says, this decision, by the way, is retroactive. Your client's not in prison. It's a routine administrative order. Your client entered into it with counsel and waived judicial review. I'm at a complete loss to understand how there's any non-frivolous argument that you would somehow set that aside. Your Honor, we're not asking you to set aside the order. Order them to give you the money back. Well, they're holding it unlawfully. I mean, they took this money under... They're holding it by agreement with your client. Because my client didn't understand... Well, they should have had better lawyers. I mean, that happens all the time. People enter agreements. They make a miscalculation. The facts would have been different. Oh, we didn't know about this. We didn't know about that. We can't be undoing judicial administrative settlement agreements left and right all over the place years later. No, but you could give... I'm sorry. You could say, and you should say, that an agency acting outside of its authority, that action is void.  There's precedent that even if there's an agreement... Even if there's apparent authority? There's Frill's case that we cite, and then there's the... There's the National Revenue Corp. It's a circuit case. So National Revenue Corp. is an interesting case. That's a case in which in Rhode Island somebody was trying to do business, a debt collection business. In Rhode Island, debt collection business requires a license, a law license. So the Attorney General of Rhode Island agreed with the parties that that provision was unconstitutional. And a court entered an order, a final order. Well, it was challenged afterwards, but it entered an order that said that based on the agreement of the parties, that provision is unconstitutional. Following that, this circuit said that the Attorney General never had the power to decide what is and is not constitutional. That's not his provenance. And therefore, that order is void. There's a Supreme Court case that we unfortunately didn't cite, but I can provide the citation for it. Thank you. It's United States v. Fidelity Guarantee Corp., 309 U.S. 506. It's from 1940, but it has been undisturbed, and recently cited by another Supreme Court, which is Charles and Demedy v. Bailey, 557 U.S. 137. All these are cited in your brief? Those two are not. You better write a letter with a copy to your opponent. Definitely will do, Your Honor. So in Fidelity Guarantee, what happened, there was a first case in district court. It was a bankruptcy case where a claim against the United States was allowed. And it went to final judgment. It became the final case. But Congress, it had to do with sovereign immunity. Congress did not waive sovereign immunity for that district. The subsequent case, same claims. And in that case, that case was brought in the appropriate jurisdiction. That's where there was sovereign immunity waiver. The second court said, with respect to the first court decision, that although it's final, it is void in relevant respects. It kept everything as to which the first court had jurisdiction, and it voided, deemed it to be void. A contract made by a government official outside of his authority, or her authority, is void. Your time is up. Thank you, Your Honor. You had three more minutes. Did you research something? Yes. All right. Mr. Schabenhardt, good morning. Good morning, Judge Scalia, and may it please the Court. Regardless of whether my colleague's interpretation of Kokesh is correct, it does not change the fact that Mr. Gallagher filed this suit in the wrong court nearly three years too late under a statute that did not provide him with a cause of action, all in an effort to collaterally attack a commission order to which F-squared consented and with respect to which it waived judicial review. Kokesh cannot cure any of those procedural missteps, and any one of them provides an independently sufficient basis on which to affirm the district court's judgment. Turning first to the waiver, of course, obviously we think that the district court correctly dismissed this suit on that basis because the waiver is clear and unequivocal and was the product of a unanimous consent by F-squared's Board of Directors. I understand that my colleague has reasons why he believes that waiver is ineffective, and we submit that those reasons are, or those arguments are incorrect as explained in her brief. But at the end of the day, each of them comes down, or each of them relies on his interpretation of the Kokesh decision. And I believe, as Judge Cayado was saying, there is simply no argument for applying that decision retroactively to a mutually agreed commission order that became final nearly three years before Kokesh was decided. But that's only the first part of the problem. I think it would be sufficient for this Court to hold that the district court lacks jurisdiction to even reach the question of the validity of the waiver because Congress has created a comprehensive review scheme for commission orders that just does not involve the district courts in the mind run of cases. So consistent with the holdings of at least five other courts of appeals, the district court in this case rightly determined that it lacks jurisdiction to adjudicate Mr. Jalbert's claims. Even if the court had jurisdiction, however, it still would not change the fact that Mr. Jalbert cannot state a claim for relief. As the commission explained below and in its brief to this Court, Section 704 of the APA conditions the availability of a cause of action on the lack of another adequate remedy in a court. And here, the same judicial review scheme that deprived the district court of jurisdiction provided F squared with such a remedy. If F squared had chosen to litigate these claims instead of settling, it could have received comprehensive judicial review either by this Court or the D.C. Circuit. The fact that it did not do so does not make that remedy inadequate. And in fact, as this Court explained in Town of Sanford, simply because a party inadvertently fails to avail itself of a scheme that is available, that does not render an alternative review scheme inadequate. In other words, there is simply no way, even if you look past the jurisdictional failing and the clear and equivocal waiver for this claim to succeed. I'm happy to take any questions from the Court. Otherwise, we'd ask that the district court's judgment be affirmed. Thank you. A couple of points, Your Honor. The judicial review, the exclusive judicial review, it is not exclusive. One should look at free enterprise. Free enterprise says there's nothing in the federal securities laws that either explicitly or implicitly curtails the jurisdiction granted to the federal district courts by other statutes. The APA is one of those statutes. And limiting what the SEC is suggesting is, in effect, limiting free enterprise to its facts, and that would be quite a stretch. So we could have brought this claim, if this claim, if Kokesh came down instead of now or, you know, recently, if it came down at the time, we would not have been required, I don't think, to go and to follow these appeal provisions, because our claim is very different. Our claim is not that the order is, there needs to be some review of the order. Our claim is that the process, everything that they've done, to this day, they're holding $30 million to which they have no authority, they have no power to hold. If an agency's authority is uncertain, how does it ever settle a case with a regulated entity? It could settle a case. It just has to stay in its lane, your honor. No, it's unclear what its lane is. Well, it wasn't clear, this is the problem. My question is, if an agency is unclear as to what its lane is, whether it has authority to seek a remedy or not, and the other party that's regulated by the agency is prepared to enter into a compromise and agree, under your theory, it seems to me, the agency could never do that because afterwards, once the law gets clarified or changed, the other party could just say, we want it torn up. I think they could have done a different waiver, the kind of waiver that I talked about, all claims known and unknown from the beginning. So now we're just down to the wording of the waiver. I think that, your honor, you asked me how could they do it. That's right. I'm saying this is one way that they could do it, but in many of them, no matter what they do, they have the powers that Congress gave them and nothing else. They cannot impose a penalty. Only Congress can decide that something ought to be a penalty, or a penalty should apply. And Congress doesn't say a penalty. And here, as we explained in our briefs, as the Supreme Court has found, it's applied as a penalty. It doesn't say, when the counsel for the SEC did not say that they're not holding it unlawfully, he did not say that it wasn't a penalty, he did not say that their actions are not void, he did not say, and they had no power, as I said from the beginning, they had no power for it. May I just finish? You may finish, but briefly. They had no power to ask for it. No power to agree to it. They had no power to pay it to the Treasury. No power to hold it to this day. And as to the remedy, at the moment, they're unlawfully holding $30 million of our client's money, and we have no remedy, none. It cannot be the case that the government of the United States can unlawfully take $30 million and that be the end of it and engage in procedural gymnastics to avoid somebody from getting that money back from them. Actually, one last thing, and I'll sit down. I'm sorry, Your Honor. No, no. I'm done. Use your briefly. Thank you. The people we represent are the only victims of the F-squared fraud. They're the predators. I think your time is up, sir. Thank you, Your Honor. Thank you.